# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

————————————————

No. 1D17-1730

————————————————

DWAYNE PINESTRAW,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

————————————————

On appeal from the Circuit Court for Escambia County.
Thomas V. Dannheisser, Judge.

February 28, 2018

ON MOTION FOR REHEARING EN BANC

B.L. THOMAS, C.J.

Appellant has filed a Motion for Rehearing En Banc of our per curiam affirmance, in which we upheld the denial of relief under Florida Rule of Civil Procedure 3.850. We deny Appellant's motion, but withdraw our opinion of August 24, 2017, and substitute this opinion in its place.

Following a jury trial, Appellant was convicted and sentenced to life imprisonment for first-degree murder, and two 15-year terms of imprisonment for attempted murder and shooting into an occupied building. The record reflects that one of the victims, Vincent Dennis, contacted Appellant under the pretense of purchasing a pound of marijuana from him on behalf

of Dennis's friend, Vaurus Barnett. Dennis knew that Barnett was going to rob Appellant of the marijuana rather than pay for it. The parties met at a gas station, and Appellant had with him Shaquill Besst. While still seated in the car, Appellant handed over the marijuana; Barnett then punched Appellant in the face and took the gun off of Appellant's lap. Appellant stated they would "be back," and drove off.

Dennis and Barnett took the marijuana to a friend's apartment. A few hours later, while the two were still inside the apartment, the tenant's brother opened the front door and told Dennis there was a person outside wanting to buy marijuana. When Dennis got to the door, Besst stated, "That's him," and Appellant pulled a gun and started firing. Dennis shut the door, but Appellant's gunshots pierced the door and window of the apartment.

Appellant shot Dennis three times. He also shot a 22-month-old child located inside the apartment. The child received two gunshots to his chest, and died from these injuries.

Appellant fled the scene of the shooting, and later abandoned his residence, but was apprehended in Texas. Besst, having negotiated a deal to plead to second-degree murder, testified against Appellant. Besst described being present at the robbery and afterward going with Appellant to the apartment where Dennis and Barnett had retreated. He testified that only Appellant had a gun, and Appellant pulled it out of his shorts and shot at Dennis through the door and the window of the apartment. He testified that after the shooting, he and Appellant returned to Appellant's apartment, at which time Appellant called his mother to pick him up, and Appellant left with his mother.

Besides the co-defendant's testimony, the prosecution read to the jury the sworn deposition of Appellant's cousin, who was undergoing kidney dialysis for a terminal condition with a projected life expectancy of two months. The cousin stated that Appellant had come to his home in Louisiana. He stated Appellant had confessed to him that he shot at someone who had robbed him and he thought he might have "killed" this person, and he also admitted he might have "killed a baby."

2

In addition to this evidence, the State presented the testimony of Barnett, Dennis, and several eyewitnesses present at the shooting and during other events which inculpated Appellant in the crimes. These persons either personally knew Appellant or recognized him as the shooter and identified him when shown a photo spread. The State also presented testimony from a number of investigators and crime-scene analysts from the police department and the Florida Department of Law Enforcement who described the evidence located at the crime scene.

Appellant did not take the stand. The defense rested without presenting any testimony or evidence. The jury found Appellant guilty as charged on all three counts.

Appellant's direct appeal in this Court proceeded pursuant to *Anders v. California*, 386 U.S. 738 (1967). In the initial brief, counsel cited the statement of judicial acts to be reviewed, and stated she could not in good faith argue trial court error or that the judgment and sentence was contrary to the weight of the evidence.

Appellant then filed his own pro se brief, arguing that the trial court erred in denying his motion for judgment of acquittal based on a lack of evidence that the murder was premeditated. He also argued that the trial court committed fundamental error by violating his right to confront his cousin, whom he asserted was actually available to testify, as evidenced by the fact that he was alive at the time Appellant wrote the brief. This Court conducted a full and independent review of the record to determine if any of Appellant's assertions had merit, or whether there were other arguable issues apparent on the face of the record. This Court concluded that the argued claims were meritless and no arguable claims were apparent, and affirmed Appellant's conviction. *Pinestraw v. State*, 151 So. 3d 1238 (Fla. 1st DCA 2014). Thereafter, Appellant filed a petition in this Court, arguing appellate counsel had acted ineffectively by failing to challenge the sufficiency of the evidence as to premeditation. This Court denied Appellant's petition. *Pinestraw v. State*, 161 So. 3d 1282 (Fla. 1st DCA 2015).

Appellant next filed a rule 3.800(a) motion, asserting that his life sentence is illegal pursuant to *Miller v. Alabama*, 132 S. Ct. 2455 (2012), in which the Supreme Court held that mandatory life sentences without parole, imposed on juveniles for homicide offenses, are illegal. Because Appellant was 19 years old at the time of the commission of the offenses, he was not a juvenile; thus, *Miller* and its related progeny did not apply, and this Court affirmed the denial of relief. *Pinestraw v. State*, 178 So. 3d 403 (Fla. 1st DCA 2015).

Appellant then filed a timely motion under Florida Rule of Civil Procedure 3.850. In it, he raised 18 total claims, 17 of which asserted ineffective assistance of trial counsel. The asserted claims included allegations that counsel should have: challenged the indictment, because the oath taken by the assistant state attorney who signed it had "expired," because it was required to be reviewed every four years, thus disqualifying her from presenting evidence to the grand jury to obtain an indictment; filed a pretrial motion in limine to stop the State from noting the child's age, how he died, or any reference to the child as a "child, kid, or baby," because the parties had stipulated to the child's birthdate; moved for a mistrial because the child's grandmother sobbed in the hallway outside the courtroom and some of the noise could be heard in the courtroom; and called Appellant's father to testify that he took Appellant to park his car near the father's house on a date which reflected he could not have visited his cousin on the date asserted by the cousin.

Due to pleading deficiencies, as required by Florida Rule of Criminal Procedure 3.850(f)(2), on April 4, 2016, the trial court struck the motion with leave to amend within 60 days. In its order, the court explained to Appellant that it was not required to provide legal guidance or suggestions on how to correct the pleading deficiencies, if correction was possible. The court explained that multiple allegations were "facially and/or legally insufficient. For example, [Appellant's] second ground is facially insufficient."* The court provided further instruction that the

---

* This claim is that counsel acted ineffectively by failing to ensure no felon sat on his jury. It appears he is asserting that his counsel had a flight to catch three days later, and she was in a

4

motion should strictly follow the parameters of rule 3.850, and all allegations should be set forth in separate claims containing succinct facts and arguments. In its conclusion, the court told Appellant that "any allegation of prejudice in fact is 'strictly applied' and must be '*positive, specific, and factual.*' *Richardson v. State*, 677 So. 2d 43, 44 (Fla. 1st DCA 1996) (emphasis added)."

On May 18, 2016, Appellant filed a motion for an extension or enlargement of the 60 days, which was scheduled to conclude on June 3, until July 31. He stated his basis for the request was that he was seeking the assistance of a certified law clerk, and the correctional institution had more than 1000 inmates and only two certified law clerks. Notably, he did not identify any specific reason as to why he needed the assistance of a law clerk to correct the facial insufficiencies.

On July 12, 2016, the trial court denied the request, stating that the ground for the request failed to demonstrate good cause. The court cited *Manning v. State*, 28 So. 3d 971, 973 (Fla. 2d DCA 2010), to inform Appellant that he should not appeal the order of denial, but should file the amended motion as soon as possible and allege the reason why he had untimely filed the motion. On July 22, 2016, pursuant to the "Mailbox Rule," Appellant filed the amended motion. This was 49 days past the June 3, 2016, due date. The motion was basically the same as the first motion, but Appellant used language from the memorandum of law which accompanied the original motion and inserted it into the amended motion. Appellant's motion continued to assert that the prosecutor should not have been allowed to reference the child as a "child" or "baby," which he asserted was the reason why he was convicted. Appellant asserted that counsel should not have permitted the medical examiner to testify as to how the child died. Appellant claimed that counsel haphazardly blundered through jury selection, because she was more focused on getting the trial over with in order to catch her flight three days later. Further, despite the trial court's instruction that he submit a

---

rush to get through the trial. He further asserts that the felons were presumed to possess prejudice against one of the parties, but does not actually assert they were prejudiced against *him*.

reason to explain why the motion was filed outside of the 60 days granted to him, Appellant did not provide any such statement.

The trial court denied the motion after finding Appellant failed to demonstrate good cause as to why the motion was filed outside of the 60 days. Appellant then filed a timely motion for rehearing, arguing that he had provided the reason for the delay in his May 2016 motion for extension of time, which was the shortage of certified inmate law clerks. He corrected his prior assertion as to the number of inmates and law clerks to state there were instead 1900 inmates in the correctional institution where he was held, and three certified legal interns, not two. He protested that he had requested the extension in good faith, and not to cause any delay. The trial court denied the motion.

Appellant timely appealed, and argued in his initial brief that the trial court abused its discretion by denying the motion for extension of time. Appellant asserted that the trial court violated his due process rights by denying the motion as untimely, without first issuing a show cause order. Appellant argued that rule 3.850(f)(2), which allows for summary denial of an amended motion which continues to be facially insufficient, should require – as does subsection (n)(3), which concerns motions evincing frivolous or malicious claims submitted in bad faith or with reckless disregard for the truth – that the trial court first issue a show cause order before denying the motion. We find no merit in this claim, as subsection (n)(3) was drafted to address frivolous, malicious, and bad-faith filings, whereas subsection (f)(2) was intended to provide direction on how courts should process motions which remain facially insufficient.

As to Appellant's initial argument, Florida Rule of Criminal Procedure 3.050 provides that when a defendant is required by the rules to do an act within a specified time, "the court for good cause shown may . . . order the period enlarged if a request therefor is made before the expiration of the period originally prescribed or extended by a previous order . . . ." And "[g]ood cause is 'a substantial reason, one that affords a legal excuse, or a cause moving the court to its conclusion, not arbitrary or contrary to all the evidence, and not . . . [a] *hardship on petitioner*." *Whittey v. State*, 965 So. 2d 362, 363 (Fla. 2d DCA 2007) (quoting

6

*State v. Boyd*, 846 So. 2d 458, 460 (Fla. 2003)) (emphasis in original).

In reviewing a trial court's decision to deny an extension of time to file a rule 3.850 motion, this Court has noted that "[b]ecause the determination of good cause is based on the peculiar facts and circumstances of each case, the trial court's exercise of discretion in weighing the equities involved will be overruled only upon a showing of abuse." *Criner v. State*, 59 So. 3d 196, 197 (Fla. 1st DCA 2011). The court in *Whittey* concluded that, in light of the standard for good cause and the trial court's broad discretion in denying motions for an extension of time, a need to schedule more time in the prison library to conduct research, but difficulty in doing so, did not establish good cause. 965 So. 2d at 364. In reaching this conclusion, the court stressed that the deficiencies in the defendant's original postconviction motion were largely factual rather than legal, and thus the defendant failed to demonstrate why additional research was necessary to assist in restating his claims. *Id.*

In its analysis in *Whittey*, the Second District noted that this Court reached a different conclusion in *Daniels v. State*, 892 So. 2d 526 (Fla. 1st DCA 2004), which involved the defendant's assertion that he needed to schedule time in the prison library and obtain the aid of a prison law clerk to complete his motion for rehearing. *Whittey*, 965 So. 2d at 363. In *Daniels*, the defendant had filed a motion for an extension of time in which to file his motion for rehearing. *Daniels*, 892 So. 2d at 527. The trial court denied the motion seeking the extension after expiration of the time period in which to timely file the motion for rehearing. *Id.* The defendant then filed the rehearing motion more than 30 days after rendition of the order denying the postconviction motion. *Id.* After the trial court denied the untimely filed motion for rehearing, the defendant filed a notice of appeal, more than five months after rendition of the order denying the postconviction motion. *Id.* In *Daniels*, which involved a petition for a belated appeal, we held that the trial court's belated denial of the motion for extension of time to seek rehearing thwarted the defendant's ability to timely pursue his appeal. *Id.* The *Whittey* court distinguished *Daniels* by noting that opinion did not discuss the trial court's broad discretion in denying a motion for an extension

7

of time. *Whittey*, 965 So. 2d at 364. It further noted that, unlike Daniels, Whittey did not lose his appellate rights due to the trial court's denial of the motion seeking the extension, which was timely rendered and did not thwart his ability to file a timely notice of appeal. *Id.* at 363.

Here, Appellant's motion for extension of time in which to file his amended postconviction motion was based upon his assertion that he had delayed access to one of the correctional institution's certified law clerks. But it is well established that a defendant does not have a constitutional entitlement to postconviction counsel. *See Kokal v. State*, 901 So. 2d 766, 778 (Fla. 2005); *Netting v. State*, 129 So. 3d 429, 432 (Fla. 1st DCA 2013) (both stating that there is no constitutional entitlement to the appointment of postconviction counsel). Thus, this ground is not legally sufficient to constitute good cause, if the case does not involve complex legal issues.

Additionally, although not required to do so, in denying Appellant's motion, the trial court provided some direction on how to address the deficiencies in Appellant's pleadings, explaining that Appellant should state succinct facts and arguments relevant to each claim. Importantly, the court instructed Appellant that "any allegation of *prejudice*" must be '*positive, specific, and factual*.'" (First emphasis added; second emphasis in original).

In essence, the trial court commendably attempted to ensure that Appellant was given every opportunity to file an amended, adequate, and timely motion. Indeed, it is the factual assertions which fail to demonstrate that Appellant suffered prejudice: Appellant possessed knowledge of the facts concerning the proceedings, and consequently, it cannot be concluded that his delayed access to a certified legal intern constituted good cause to grant his motion for extension of time in which to file his amended motion. *See Whittey*, 965 So. 2d at 364.

There being no cause to find the trial court abused its discretion by denying Appellant's motion for extension of time in which to file his amended motion, we affirm the trial court's order of denial.

AFFIRMED.

WOLF and WINOKUR, JJ., concur.

_____

Dwayne Pinestraw, pro se, Appellant.

Pamela Jo Bondi, Attorney General, and Thomas H. Duffy, Assistant Attorney General, Tallahassee, for Appellee.